UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
ROBERT GAINES,

                Plaintiff,                           **MEMORANDUM AND ORDER**
                                                                   15-CV-2630 (RRM) (RER)

        -against-

CITY OF NEW YORK,

                Defendant.
----------------------------------------------------------------x
ROSLYNN R. MAUSKOPF, United States District Judge.

*Pro se* plaintiff Robert Gaines, currently incarcerated at the Mid-State Correctional Facility, brings this action pursuant to 42 U.S.C. § 1983, alleging violations of his Fourth and Eighth Amendment constitutional rights. On October 9, 2015, defendant City of New York (the "City")[1] moved to dismiss Gaines' complaint pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6) for failure to state a claim. (Mem. in Supp. of Mot. (Doc. No. 12) at 8.)[2] On September 30, 2015, Gaines filed a letter with the Court, reiterating his original claims and raising, for the first time, a First Amendment violation (the "September Letter").[3] (September

---

[1] Gaines' complaint names both the City and the Department of Correction for New York City (the "DOC"). On August 10, 2015, the Court issued an Order of partial dismissal dismissing all claims against the DOC. (8/10/15 Order (Doc. No. 7).)

[2] For ease of reference, citations to court documents utilize ECF pagination.

[3] On October 19, 2015, the City responded stating that it did not believe the letter constituted Gaines' opposition to the motion to dismiss and opposing Gaines' seeming attempt to amend his complaint without filing an amended pleading. (City 10/19/15 Ltr. (Doc. No. 15).) On November 2, 2015, Gaines' filed a second letter, dated October 29, 2015, reasserting the alleged constitutional violations, threatening to bring a class action, and claiming that he was not receiving proper legal representation (the "November Letter," together with the September Letter, "Gaines' Letters"). (November Letter (Doc. No. 16).) On December 9, 2015, the City filed a reply memorandum, together with two additional letters from other inmates that the City received from Gaines (*see* note 7), indicating that it was construing Gaines' Letters as opposition to its motion to dismiss. (Reply Mem. (Doc. No. 19) at 7.) The Court considers Gaines' Letters to be Gaines' opposition to the City's motion and, in light of Gaines' *pro se* status, liberally construes Gaines' Letters as a request seeking to amend the complaint to include a First Amendment claim. For the reasons stated below, the request to amend through these letters is denied.

1

Letter (Doc. No. 14) at 3.) For the reasons discussed below, the City's motion to dismiss is granted with respect to Gaines' Fourth and Eighth Amendment claims and Gaines' motion to amend his complaint is also granted.[4]

## BACKGROUND[5]

On or about November 2014, Gaines was transferred to the George R. Vierno Center on Rikers Island. (Compl. (Doc. No. 1) at 9–10.) Gaines alleges that he "began going to his appointed court dates" and he, "as well as out[6] inmates was stripped searched to his nude body[,] was searched while a video camera was in the strip search area that was recording the entire search of the plaintiff as well as other inmates, to be viewed and recorded[, and] this area was the chapel area not a authorized area to conduct searches." (*Id.* at 9.) Gaines asserts that there was no "privacy[,] only . . . makeshift stalls that still did not block the eye of the camera." (*Id.* at 10.) He alleges that this type of search "took place four to five times until the plaintiff was sentenced and moved." (*Id.*)

Gaines asserts that he "was searched on camera on every scheduled court date . . . in the chapel Area" and argues that the chapel should be a sanctuary and not a search area. (*Id.* at 11, 14.) He further contends that his "likeness could be used for [i]llegal activities such as pornographic etc." (*Id.* at 11.) Finally, Gaines asserts that he and other inmates were strip searched "with female staff present Correction staff (C.O.'s) mostly during court appearances."

---

[4] To the extent Gaines is requesting legal representation in his November Letter, his request is denied. A party has no right to counsel in a civil action and Gaines has not demonstrated that his position is likely to be of substance. *See Gaddy v. Waterfront Comm'n*, No. 13-CV-3322 (AT), 2014 WL 4739890, at *6 (S.D.N.Y. Sept. 19, 2014) (stating that a finding that a claim is likely to be of substance is a threshold requirement for a court to appoint *pro bono* counsel in a civil case).

[5] The following allegations are taken from Gaines' complaint and are, for purposes of this Memorandum and Order, accepted as true. *See Stratte-McClure v. Morgan Stanley*, 776 F.3d 94, 97 n.1 (2d Cir. 2015).

[6] The complaint appears to say "out." The Court understands Gaines to be referring to other inmates who were also taken out of the facility for court appearances.

(*Id.* at 16.) Gaines claims that the searches "were performed, a[t] his exit of the facility to sole[l]y go to court and to be returned and searched again." (*Id.* at 15.) He seeks monetary damages for emotional and mental distress, as well as injunctive relief "to have this pattern . . . cease and to have the Department rules change[d]." (*Id.* at 3, 12, 14–16.)

In his September Letter, Gaines asserts that his "Muslim Religion prohibits [him] from being naked in front of other females that are not [his] wife," and that such exposure is "very much [unacceptable]" in his religion. (September Letter at 3.)[7]

## STANDARD OF REVIEW

At this stage, the Court assumes the truth of the facts alleged in the complaint, and draws all reasonable inferences in Gaines' favor. *See Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009). The Court is not, however, "bound to accept as true a[ny] legal conclusion couched as a factual allegation." *Sharkey v. Quarantillo*, 541 F.3d 75, 83 (2d Cir. 2008) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

In order to withstand the City's motion to dismiss, Gaines' complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010). Although the complaint need not contain "detailed factual allegations," simple "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555); *see also Harris*, 572 F.3d at 72. Rather, the

---

[7] Gaines also provided the City with two letters from other inmates supporting his allegations. Gaines did not submit to the Court copies of the other inmates' letters. The City appends to its declaration submitted in support of its reply letters from other inmates relating to such searches that the City received from Gaines. (*See* Decl. of Brachah Goykadosh, Ex. E (Doc. No. 18-1) at 10–12 ("Spencer Ltr." at 11; "Millstein Ltr." at 12).) The Court did not submit these letters to the Court. In any event, the Court will not consider such extrinsic evidence on this Rule 12 motion.

complaint must include "enough facts to state a claim to relief that is plausible on its face," *Twombly*, 550 U.S. at 570, which means "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

The Court is also mindful, however, that Gaines is proceeding *pro se*. As such, his complaint is held to a less exacting standard than a complaint drafted by an attorney. *See Haines*, 404 U.S. at 520–21; *Boykin v. KeyCorp*, 521 F.3d 202, 214 (2d Cir. 2008). Because *pro se* litigants "are entitled to a liberal construction of their pleadings," the Court reads Gaines' complaint to "raise the strongest arguments that [it] suggest[s]." *Green v. United States*, 260 F.3d 78, 83 (2d Cir. 2001) (internal citations omitted). Nonetheless, the Court "need not argue a *pro se* litigant's case nor create a case for the *pro se* which does not exist." *Molina v. New York,* 956 F. Supp. 257, 260 (E.D.N.Y. 1995). Where a *pro se* plaintiff has altogether failed to satisfy a pleading requirement, the Court must dismiss the claim. *See Rodriguez v. Weprin*, 116 F.3d 62, 65 (2d Cir. 1997) (citation omitted).

## DISCUSSION

Gaines brings this action pursuant to 42 U.S.C. § 1983. In order to maintain a § 1983 action, a plaintiff must allege two essential elements. First, "the conduct complained of must have been committed by a person acting under color of state law." *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994) (citation omitted). Second, "the conduct complained of must have deprived a person of rights, privileges or immunities secured by the Constitution or laws of the United States." *Id.* Section 1983 "does not create a federal right or benefit; it simply provides a mechanism for enforcing a right or benefit established elsewhere." *Morris–Hayes v. Bd. of Educ. of Chester Union Free Sch. Dist.*, 423 F.3d 153, 159 (2d Cir. 2005) (citing *Oklahoma City*

*v. Tuttle,* 471 U.S. 808, 816 (1985)).

Moreover, "to hold a city liable under § 1983 for the unconstitutional actions of its employees, a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Torraco v. Port Auth. of N.Y. & N.J.*, 615 F.3d 129, 140 (2d Cir. 2010) (internal citation and quotation marks omitted); *see also Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978) (holding that a government may only be held liable under § 1983 "when execution of a government's policy or custom . . . inflicts the injury"). As discussed below, Gaines has failed to demonstrate a violation of his Fourth and Eighth Amendment rights. Accordingly, those claims are dismissed. Gaines' request to amend the complaint is denied.

## I. Constitutional Violations

### a. Fourth Amendment Claim

The Fourth Amendment protects against unreasonable searches. *Bell v. Wolfish*, 441 U.S. 520, 558 (1979). While inmates confined in prison do not enjoy the same privacy rights as non-prisoners, they do retain basic constitutional rights, including the right to be free from unreasonable searches. *Perez v. N.Y. State Dep't of Corr. Servs.*, No. 08-CV-1031 (LEK) (RFT), 2010 WL 1235637, at *5 (N.D.N.Y. Mar. 17, 2010) ("*Perez I*"), *report and recommendation adopted* 2010 WL 1608868 (Apr. 20, 2010), *aff'd* 448 F. App'x 152 (2d Cir. 2012). The test for reasonableness is not a precisely defined or mechanical test, but rather "requires a balancing of the need for the particular search against the invasion of personal rights that the search entails." *Bell*, 441 U.S. at 559. Factors considered relevant to the reasonableness analysis include the scope of the intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted. *Id.* "Generally, strip searches have been upheld as a

reasonable security measure within a correctional facility even in the absence of probable cause as long as they are related to a legitimate penological goal. A strip search is unconstitutional if it is unrelated to any legitimate penological goal or if it is designed to intimidate, harass, or punish." *Vaughn v. Strickland*, 12-CV-2696, 2013 WL 3481413, at *5 (S.D.N.Y. July 11, 2013). In considering whether an inmate's strip search is constitutional, deference must be given to decisions of the officials in charge of the prison "unless there is 'substantial evidence' demonstrating [that] their response to the situation is exaggerated." *Florence v. Bd. of Chosen Freeholders of Cty. Of Burlington*, 132 S. Ct. 1510, 1518 (2012).

Here, Gaines alleges that he was searched on his appointed court dates. (Compl. at 9, 11.) Such searches are generally considered "reasonably related to legitimate security interests," including preventing the smuggling of contraband into or out of the facility. *Florence*, 132 S. Ct. at 1516–17; *see also Smith v. City of New York*, No. 14-CV-5934 (JCF), 2015 WL 3929621, at *2 (S.D.N.Y. June 17, 2015) ("Courts in this district . . . find that strip searches of inmates upon departure and return from court appearance are constitutional given the interest in preventing contraband from being moved into or out of jail facilities."); *Myers v. City of New York*, No. 11-CV-8525 (PAE), 2012 WL 3776707, at *9 (S.D.N.Y. Aug. 29, 2012) (finding that strip searches prior to court appearances did not violate the Fourth Amendment because they were reasonably related to a legitimate security interest).

Further, Gaines alleges nothing to suggest that the searches were not conducted in an objectively reasonable manner. *See Perez v. N.Y. State Dep't of Corrs.*, 448 F. App'x 152, 153 (2d Cir. 2012) (summary order) ("*Perez II*") ("[T]he Fourth Amendment inquiry is one of 'objective reasonableness' under the circumstances."). There is nothing inherently unreasonable about the selection of a chapel with "makeshift stalls," (Compl. at 10), as a location for the

searches, and the complaint contains no allegations that the chapel was selected to intimidate, harass, or punish Gaines. *See Vaughn*, 2013 WL 3481413, at *5 (finding that a strip search is unconstitutional where designed to intimidate, harass, or punish). Under *Flores*, correction officers are entitled to "substantial discretion" and deference from the Court in devising means to maintain safety and order in correctional facilities. *Florence*, 132 S. Ct. at 1515. Accordingly, there is no basis for finding that the mere fact that the search took place in a chapel makes it unconstitutional. Further, the presence of a video camera, other inmates, and female correction officers, does not, without more, make the search unconstitutional. *See, e.g.*, *Smith*, 2015 WL 3929621, at *2 (dismissing Fourth Amendment claim and finding that "neither the presence of cameras nor the presence of other inmates and employees of a correctional facility makes an otherwise constitutional strip search unconstitutional") (collecting cases); *Peek v. City of New York*, No. 13-CV-4488 (AJN), 2014 WL 4160229, at *2 (S.D.N.Y. Aug. 18, 2014) (dismissing a Fourth Amendment claim based on a strip search in front of a camera, because "[w]ithout more . . . the presence of a camera at a strip search does not amount to a constitutional violation"); *Montgomery v. Hall*, No. 11-CV-4645 (PAC) (GWG), 2013 WL 1982920, at *4 (S.D.N.Y. May 15, 2013) ("Case law reflects that the constitutionality of a strip search is not negated by the presence of other inmates and employees of the facility – of either sex – during the search.") (collecting cases), *report and recommendation adopted*, 2013 WL 3816706 (July 22, 2013). Accordingly, Gaines fails to allege facts sufficient to demonstrate that the searches were unreasonable and his Fourth Amendment claim is dismissed.

### b. Eighth Amendment Claim

The Eighth Amendment prohibits the infliction of cruel and unusual punishment.[8] U.S. Cont. amend. VIII; *George v. City of New York*, No. 12-CV-6365 (PKC), 2013 WL 5943206, at *9 (S.D.N.Y. Nov. 6, 2013). Prison officials violate the Eighth Amendment only when each of two requirements are met. *Id.* First, as an objective matter, the alleged deprivation must be "sufficiently serious." *Id.* Second, the alleged perpetrator must subjectively possess a "sufficiently culpable state of mind." *Id.* "Even where inmates allege aggressive or inappropriate behavior during strip searches, courts are reluctant to find that such activity rises to the objectively serious level of an Eighth Amendment violation." *Vaughn*, 2013 WL 3481413, at *3; *see, e.g.*, *Boddie v. Schneieder*, 105 F.3d 857, 861 (2d Cir. 1997) (finding that a plaintiff's allegations that he was verbally harassed, touched, and pressed against without his consent did not state an Eighth Amendment claim); *Show v. Patterson*, 955 F.Supp. 182, 191–92 (S.D.N.Y. 1997) (finding no Eighth Amendment claim where plaintiffs alleged that guards strip searched them as a group for the sole purpose of humiliation); *Harris v. City of New York*, 01-CV-6927, 2003 WL 554745, at *5 (S.D.N.Y. Feb. 26, 2003) (finding that plaintiff's allegations of a humiliating strip search did not rise to the level of an Eighth Amendment violation); *LaRocco v. N.Y.C. Dep't of Corr.*, 99-CV-9759 (LJB) (RLE), 2001 WL 1029044, at *5 (S.D.N.Y. Aug. 31, 2001) (finding that allegations that an officer forced the plaintiff-inmate to "undergo a routine

---

[8] It is not clear from Gaines' submissions whether Gaines was a convicted prisoner or a pre-trial detainee at the time in question. The Eighth Amendment prohibition of cruel and unusual punishment applies only to convicted individuals. *Caiozzo v. Koreman*, 581 F.3d 63, 69 (2d Cir. 2009). Pre-trial detainees are not being punished because they have not been convicted, and, accordingly, must bring claims pursuant to the Fourteenth Amendment. *Id.* However, the standard of review for a § 1983 claim alleging an illegal strip search is the same under the Eighth and Fourteenth Amendments, thus a determination of Gaines' status is not necessary to conduct the Court's analysis for purposes of this motion. *See Little v. City of New York*, No. 13-CV-3813 (JGK), 2014 WL 4783006, at *3 (S.D.N.Y. Sept. 25, 2014) (finding that the standards applied in evaluating the constitutionality of a strip search under the Eighth and Fourteenth Amendments are "identical"); *Arnold v. Westchester Cty.*, No. 09-CV-3727 (JSR) (GWG), 2012 WL 336129, at *4 (S.D.N.Y. Feb. 3, 2012) ("A court considers such claims [including a § 1983 claim for an illegal strip search] made by a pretrial detainee under the same standards that govern a claim, under the Eighth Amendment, to be free from cruel and unusual punishment." (collecting cases)), *report and recommendation adopted*, 2012 WL 841484 (Mar. 13, 2012).

where he had to lift his penis and spread his buttocks about three times" were "not severe enough" to constitute an Eighth Amendment claim), *report and recommendation adopted*, Sept. 26, 2001 (Docket No. 31). "[T]he law of this Circuit indicates that a strip search without elements of sexual harassment, excessive force, or indeed any physical contact at all is not 'sufficiently serious' under the objective pong to support a claim based on cruel and unusual punishment under the Eighth Amendment." *George*, 2013 WL 5943206, at *10.

Here, Gaines alleges only that he was strip searched in a chapel, in front of a video camera, and in front of other inmates and female correction officers. (Compl. at 9–12.) He does not allege any physical contact or sexual or verbal harassment during the strip searches and thus has not alleged facts sufficient to meet the objective prong of the test. (*See id.*) Moreover, Gaines alleges no facts that suggest that the individuals conducting the strip search demonstrated "deliberate indifference" to his health and safety, which is required for a showing that they had a "culpable state of mind." *Vaughn*, 2013 WL 3481413, at *3. Accordingly, Gaines has failed to allege facts sufficient to support a claim of cruel and unusual punishment and his claim that the search constituted an Eighth Amendment violation is dismissed. *See George*, 2013 WL 5943206, at *9–10 (dismissing pursuant to 12(b)(6) an Eighth Amendment claim based on a strip search conducted in the middle of the prison mess hall for the purpose of humiliating and making a spectacle of inmates because there were no allegations that the correction officers sexually or verbally harassed the inmates).

## II. Amendment Based on Gaines' Letters

To the extent that Gaines attempts to amend his complaint through his letters to add a First Amendment claim, the proposed amendment is denied. First, the avenue through which Gaines attempted to amend is improper, *Southwick Clothing LLC v. GFT (USA) Corp.*, No. 99-

CV-10452 (GBD), 2004 WL 2914093, at *6 (S.D.N.Y. Dec. 15, 2004) ("A complaint cannot be amended merely by raising new facts and legal theories in plaintiffs' opposition papers."), the proposed amendment would be futile because the claims as asserted in Gaines' Letters fail to state a claim on which relief can be granted. *See Tylicki v. Schwartz*, 401 F. App'x 603, 604 (2d Cir. 2010) (summary order) (leave to amend need not be granted where amendment would be futile).

Moreover, his amendment as crafted would be futile. Gaines alleges that his First Amendment rights were violated because he was required to strip naked in the presence of female correction officers in contravention of his Muslim faith. (Gaines 9/30/15 Ltr. at 3.) However, Gaines does not name as defendants any individuals involved in the strip searches, nor does he indicate when or how often any such incident occurred. Most important, he does not allege a policy or custom of having female correction officers present during male strip searches. *See Torraco*, 615 F.3d at 140 (to hold the City liable under § 1983 requires an official policy or custom that causes the plaintiff to be subjected to a denial of a constitutional right). Even reading his allegations liberally, Gaines has not asserted any basis to give rise to *Monell* liability against the City. Thus, the allegations in Gaines' Letters are insufficient to assert a claim against the City. Accordingly, amendment of the complaint to include the allegations asserted in Gaines' Letters would be futile, and to the extent that Gaines sought to amend his complaint through Gaines' Letters, the amendment is denied.

However, given Gaines' *pro se* status, the Court will grant Gaines thirty days from the date of this Memorandum and Order to file an Amended Complaint if he chooses. The document must be captioned "Amended Complaint" and contain the same docket number assigned to this case. Any Amended Complaint must state sufficient facts to give rise to an

actionable claim.  Should Gaines elect not to file an Amended Complaint, or fail to so do in a timely manner as ordered herein, this action will be dismissed.

## CONCLUSION

For the reasons set forth above, the City's motion to dismiss is granted.  Gaines is given thirty (30) days from the date of this Memorandum and Order to file an Amended Complaint if he chooses to so do.

The Clerk of Court is directed to send Gaines a copy of this Memorandum and Order and note the mailing on the docket.

SO ORDERED.

Dated: Brooklyn, New York  　　　　　　　　*Roslynn R. Mauskopf*
　　　　September 28, 2016

　　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　　ROSLYNN R. MAUSKOPF
　　　　　　　　　　　　　　　　　　　　　United States District Judge